UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
                                            )
STATE OF ALASKA,                            )
                                            )
            Plaintiff,                       )
                                            )
      v.                                    )          Civil Action No. 25-0330 (PLF)
                                            )
DEPARTMENT OF THE                           )
INTERIOR,                                   )
                                            )
BRYAN MERCIER, in his official              )
capacity as Acting Assistant Secretary,     )
Indian Affairs,                             )
                                            )
KAREN HAWBECKER, in her official            )
capacity as Acting Solicitor,               )
                                            )
SHARON M. AVERY, in her official            )
capacity as Acting Chairwoman of the        )
National Indian Gaming Commission,          )
                                            )
and                                         )
                                            )
NATIVE VILLAGE OF EKLUTNA,                  )
                                            )
            Defendants.                      )
_____)


<u>OPINION AND ORDER</u>

        Plaintiff State of Alaska (the "State") has brought this action seeking to enjoin the

recent approvals of defendant Native Village of Eklutna's (the "Tribe") request to conduct

gaming operations on the Ondola Allotment located in Alaska. The Tribe has moved to transfer

the case to the District of Alaska – the Tribe's home district – pursuant to 28 U.S.C. §§ 1631 and

1406(a), or in the alternative, pursuant to 28 U.S.C. § 1404(a). The other defendants in this

action – the Department of the Interior, Bryan Mercier, Karen Hawbecker, and Sharon M. Avery (collectively, "Federal Defendants") – support the Tribe's motion. See Defendant Native Village of Eklutna's Motion to Transfer ("Mem.") [Dkt. No. 16] at 1. For the reasons that follow, defendants' motion to transfer the case to the District of Alaska is granted.[1]

## I. BACKGROUND

### A. Factual Background

This case arises out of the defendant Tribe's efforts to conduct gaming under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701-2721, on the Ondola Allotment located within the boundaries of the Municipality of Anchorage, Alaska. See Compl. ¶¶ 1-2.[2] Pursuant to the IGRA, "[a]n Indian tribe may engage in, or license and regulate, class II gaming on Indian lands within such tribe's jurisdiction." 25 U.S.C. § 2710(b). The IGRA defines "Indian lands" to mean:

(A) all lands within the limits of any Indian reservation; and

(B) any lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against

---

[1] The Court has reviewed the following papers in connection with this matter: Complaint for Declaratory Judgment and Injunctive Relief ("Compl.") [Dkt. No. 1]; Defendant Native Village of Eklutna's Motion to Transfer ("Mem.") [Dkt. No. 16]; State of Alaska's Opposition to Motion to Transfer ("Opp.") [Dkt. No. 25]; and Reply in Support of Defendant Native Village of Eklutna's Motion to Transfer ("Reply") [Dkt. No. 26].

[2] The parties refer to the tribal allotment at issue in this case differently: the Tribe refers to the allotment as the "Eklutna Allotment," while the State of Alaska refers to it as the "Ondola Allotment." Compare Compl. ¶ 11 with Mem. at 2. The Court will refer to the allotment as the "Ondola Allotment" given that the National Indian Gaming Commission's letter approving the Tribe's gaming ordinance refers to it as such. See Native Village of Eklutna 2024 Gaming Ordinance, NIGC (July 18, 2024), available at https://www.nigc.gov/images/uploads/gamingordinances/20240718_Native_Village_of_Eklutna_Gam_Ord.pdf ("NIGC Approval Letter").

2

> alienation and over which an Indian tribe exercises governmental
> power.

25 U.S.C. § 2703(4).  The core of the inquiry centers on whether a tribe has governmental power

over a particular allotment.  See Native Village of Eklutna v. U.S. Department of the Interior

("Eklutna I"), Civil Action No. 19-2388 (DLF), 2021 WL 4306110, at *1-2 (D.D.C. Sept. 22,

2021) (stating that the inquiry is "whether the Allotment had the requisite nexus with the Tribe to

be 'Indian lands' – that is, whether tribal jurisdiction existed").

  In 1993, then-Solicitor of Interior Thomas Sansonetti issued an opinion setting

forth "the legal position of the United States on the nature and scope of so-called governmental

powers over lands and nonmembers that a Native village can exercise after the Alaska Claims

Settlement Act."  Eklutna I, 2021 WL 4306110, at *4 (citation and internal quotation marks

omitted); see Ex. C to Plaintiff's Motion for a Preliminary Injunction [Dkt. No. 15-4]

("Sansonetti Opinion").  The Sansonetti Opinion "extensively reviewed the history of Alaska, its

acquisition from Russia, the status of the native groups from the time of acquisition to the

present, the legislation dealing with Alaska Natives, and the various actions Interior had taken

with respect to Alaska Native groups," and set forth standards that Interior had used to determine

"whether a plot of land is one over which an Indian tribe exercises governmental power as

required by the Indian Gaming Regulatory Act."  See Eklutna I, 2021 WL 4306110, at *4-5

(citations and internal quotation marks omitted).  Based on an analysis of the Alaska Native

Allotment Act ("ANAA"), the Sansonetti Opinion concluded that "Alaska Native allotments

appear to be an exception to the general rule that the territorial basis for tribal authority coincides

with the federal Indian country status of lands."  Sansonetti Opinion at 124.  While Alaska

Native allotments "are Indian country for purposes of federal authority and protection," it did not

3

appear that "Congress intended Alaska Native villages to exercise governmental powers over these lands." Id.

In June 2016, the Tribe – a federally recognized Indian tribe of the Dena'ina people whose traditional homeland is in the upper Cook Inlet region of Alaska, see Compl. ¶ 23; Mem. at 2 – submitted an application to Interior requesting a decision on whether the Ondola allotment constituted "Indian lands" under the IGRA. See Compl. ¶¶ 4, 46-47; see also Eklutna I, 2021 WL 4306110, at *1-2 (describing Tribe's 2016 application). Approximately two years later, then-Acting Assistant Secretary of Interior John Tahsuda issued an opinion concluding that the allotment was not "Indian lands," and therefore that the Ondola Allotment was ineligible for an Indian gaming facility. See Compl. ¶ 48. The Assistant Secretary reached this conclusion by applying the five factors set forth in the Sansonetti Opinion for determining whether the plot of land was one over which the Tribe exercised governmental power. See Compl. ¶ 48; see also Eklutna I, 2021 WL 4306110, at *2.

On August 8, 2019, the Tribe filed suit in this District against Interior and several Interior officials. See Eklutna I, 2021 WL 4306110. Specifically, the tribe brought three claims under the Administrative Procedure Act ("APA"): (1) "Interior's Indian lands determination was arbitrary, capricious, and contrary to law;" (2) "Interior's decision was improperly influenced by political considerations;" and (3) "the disapproval of the proposed lease was arbitrary and capricious." Id. at *2. The Tribe sought "declaratory relief holding that the Ondola Allotment is Indian lands and an injunction requiring Interior to approve the proposed lease." Id. The State of Alaska intervened in support of Interior. Id. at *1.

On September 22, 2021, Judge Friedrich granted summary judgment in favor of Interior. See Eklutna I, 2021 WL 4306110, at *11. In brief, Judge Friedrich concluded that

4

Interior's Indian land determination was not arbitrary and capricious, contrary to law, or improperly influenced by political considerations. See id. Judge Friedrich rejected the Tribe's argument that the Sansonetti Opinion – which was the basis for Interior's conclusion that the Ondola Allotment did not constitute "Indian lands" – was invalid as a matter of law, id. at *5-6, or had been superseded by later-enacted statutes. See id. at *6-8. Judge Friedrich concluded that because "[t]he Sansonetti Opinion was valid in the first instance and remains so today," "Interior [had] applied the correct legal standard when making the Ondola Allotment Indian lands determination." Id. at *4, *8. Accordingly, Judge Friedrich granted judgment in favor of Interior and dismissed the case. See Eklutna I, Civil Action No. 19-2388 (DLF), Judgment in a Civil Action (D.D.C. Jan. 10, 2022) [Dkt. No. 74] ("Judgment in Eklutna I").

In February 2024, then-Solicitor of Interior Robert Anderson issued a Solicitor Opinion concluding that the Sansonetti Opinion's "conclusion concerning tribal jurisdiction over Native Allotments was unpersuasive on the merits and could not be reconciled with subsequent case law and administrative developments." Ex. A to Plaintiff's Motion for a Preliminary Injunction [Dkt. No. 15-4] ("Anderson Opinion") at 2 (footnote omitted). In relevant part, Solicitor Anderson reasoned:

> Under well-settled law, Congress must clearly express its intent to divest a tribe's sovereignty or inherent powers. With respect to the ANAA, there is no indication of congressional intent to divest tribes of jurisdiction over Alaska Native allotments, nor is there any indication that Congress intended to distinguish Native Allotments from those held by tribal member allottees in the lower 48 states, over which courts and the Department have found tribal jurisdiction exists. To the contrary, and as discussed above, congressional intent points to ANAA Allotments being treated similarly to Section 4 of the GAA's public-domain allotments respecting the exercise of tribal jurisdiction over them.
>
> Moreover, none of the reasons cited by the [Sansonetti] Opinion for distinguishing Native Allotments from those in the lower 48 states

5

is persuasive, and the Opinion's rationale for doubting tribal jurisdiction has largely been superseded. Therefore, there are no "specific facts and law applicable to" the creation of Native Allotments to support a finding of congressional intent to abrogate tribal jurisdiction in the ANAA.

In the absence of any evidence that "Congress has acted to alter the general principles" governing tribal jurisdiction over Native Allotments, I find that Congress did not divest tribes in Alaska of their inherent sovereign powers in enacting the ANAA. Accordingly, Alaska Native allotments are not "an exception to the general rule," but subject to the same legal principles governing other allotments in the lower 48 states. Under those principles, tribes in Alaska are presumed to have jurisdiction over lands that are Indian country, including ANAA Allotments.

Anderson Opinion at 19 (footnotes omitted). In addition to addressing the Sansonetti Opinion, Solicitor Anderson concluded that the court in Eklutna I "erred in both its reasoning and its ultimate conclusion." Id. at 16. Principally, Solicitor Anderson reasoned that the court "simply adopted the Sansonetti Opinion's interpretation" and failed to interpret the ANAA. Id.

Following the issuance of the Anderson Opinion, the Tribe submitted another application to Interior for permission to conduct gaming on the Ondola Allotment. See Opp. at 19. In June 2024, the Solicitor's Office at Interior conducted a new analysis of the Ondola Allotment and concluded that it qualifies as Indian lands under the IGRA. See id. Approximately one month later, the National Indian Gaming Commission's ("NGIC") Acting Chair, defendant Sharon M. Avery, approved the Tribe's gaming ordinance. See Ex. S to Plaintiff's Motion for a Preliminary Injunction [Dkt. No. 15-20] ("NIGC Approval Letter"). Chairwoman Avery explained that Interior's June 2024 analysis made clear that the Anderson Opinion – rather than the Sansonetti Opinion – provided the appropriate "legal standard for the Department of Interior to apply when evaluating whether an Alaska Indian Tribe has jurisdiction

6

over a Native Allotment." Id. at 7. And because she "agree[d] with this analysis," she "adopted the opinion into [her] approval of the Tribe's Gaming Ordinance." Id. at 9.[3]

## B. Procedural Background

The State of Alaska filed the complaint in this case on February 4, 2025. See Compl. The State of Alaska brings two counts: (1) Chairwoman Avery's "Indian lands" determination, NIGC's approval of the Tribe's gaming lease, and the Anderson Opinion were arbitrary, capricious, an abuse of discretion, in excess of statutory authority, and/or otherwise contrary to the law in violation of the APA, id. ¶¶ 65-69; and (2) the Tribe is collaterally estopped from relitigating the issue of whether the Ondola Allotment consistutes "Indian lands" in light of the decision in Eklutna I, 2021 WL 4306110. See id. ¶¶ 70-71. The State of Alaska requests, inter alia, an order that: (1) declares NIGC's Approval Letter, the Anderson Opinion, and "the Department of the Interior's actions" "arbitrary and capricious, an abuse of discretion, and not in accordance with law;" (2) vacates NIGC's approval of the Tribe's gaming ordinance and finding that the Ondola Allotment constitutes "Indian lands;" (3) vacates Interior's approval of the lease of the Ondola Allotment to the Tribe; (4) enjoins Interior from applying the

---

[3] On February 28, 2025, Interior announced that it was placing all "M-opinions" issued between January 20, 2021, and January 20, 2024, under "Suspension Review" until "a thorough review" of the opinions was conducted. See Ex. U to Plaintiff's Motion for a Preliminary Injunction [Dkt. No. 15-22]. While the opinions are "suspended," Interior's memorandum instructs that "no unit of the Department of the Interior should rely on those M-opinions as authoritative and binding without first consulting with the Office of the Solicitor for guidance." Id.; see Opp. at 20. The parties do not present any argument as to how this should factor into the Court's analysis of the instant motion.

Anderson Opinion; and (5) enjoins NIGC and Interior "from granting gaming ordinances or approving leases for the purposes of gaming on any Native Allotment in Alaska." Id. at 24-25.

On April 9, 2025, the State of Alaska filed a motion for a preliminary injunction seeking an order enjoining the defendants "from taking any action authorized by the NIGC's approval of Eklutna's gaming ordinance or the Assistant-Secretary's approval of the lease." See State of Alaska's Motion for Preliminary Injunction [Dkt. No. 15] at 30. On the same day, the Tribe filed the motion to transfer the case that is now before the Court. See Mem.

Given that the Tribe's motion to transfer raised issues of this Court's jurisdiction and the appropriate forum for this case, the Court ordered expedited briefing on the motion to transfer. See Apr. 10, 2025 Minute Order; see also Order [Dkt. No. 23].

## II.  LEGAL STANDARD

### A.  Motion to Transfer under 28 U.S.C. § 1404(a)

Under 28 U.S.C. § 1404(a), a district court may transfer a civil action to any other district "[f]or the convenience of the parties and witnesses, in the interest of justice," so long as the transferee district is one where the case "might have been brought." 28 U.S.C. § 1404(a); see M.M.M. on behalf of J.M.A. v. Sessions, 319 F. Supp. 3d 290, 294-95 (D.D.C. 2018); Patel v. Mayorkas, Civil Action No. 24-2042 (PLF), 2024 WL 5375472, at *1 (D.D.C. Dec. 18, 2024). Section 1404(a) affords the Court broad discretion in determining whether transfer from one jurisdiction to another is appropriate. See Mejia on behalf of E.G.S. v. U.S. Immigr. & Customs Enforcement, Civil Action No. 18-2096 (PLF), 2018 WL 4705809, at *2 (D.D.C. Oct. 1, 2018). The decision to transfer is made based on an "individualized, case-by-case consideration of convenience and fairness." See Michigan Welfare Rts. Org. v. Trump, 600 F. Supp. 3d 85, 98 (D.D.C. 2022) (quoting Berry v. U.S. Dep't of Justice, 49 F. Supp. 3d 71, 74 (D.D.C. 2014)).

The party moving to transfer "bears a heavy burden" of establishing that the plaintiffs' choice of forum is inappropriate and the case should be transferred to another venue.  See Seafreeze Shoreside Inc. v. United States Dep't of the Interior, Civil Action No. 21-3276 (CRC), 2022 WL 3906934, at *2 (D.D.C. June 27, 2022) (citation omitted).  This Court in particular "must be vigilant 'to guard against the danger that a plaintiff might manufacture venue . . . [b]y naming high government officials as defendants' and 'bring[ing] a suit here that properly should be pursued elsewhere.'"  Raju v. Jaddou, Civil Action No. 22-02308 (APM), 2023 WL 5321888, at *1 (D.D.C. Apr. 7, 2023) (quoting Cameron v. Thornburg, 983 F.2d 253, 256 (D.C. Cir. 1993)).

To justify transfer under Section 1404(a), defendants must make two showings.  First, they must establish that plaintiffs could have brought the action in the proposed transferee district.  See Center for Biological Diversity v. United States Forest Serv., Civil Action No. 24-0087 (TJK), 2024 WL 2299642, at *2 (D.D.C. May 21, 2024); see also 28 U.S.C. § 1404(a).  Second, defendants must demonstrate that "considerations of convenience and the interest of justice weigh in favor of transfer to that district."  Tchouaket v. Garland, Civil Action No. 24-312 (LLA), 2024 WL 1619334, at *1 (D.D.C. Apr. 15, 2024) (quoting Blackhawk Consulting, LLC v. Fed. Nat'l Mortg. Ass'n, 975 F. Supp. 2d 57, 59 (D.D.C. 2013)).  In evaluating whether defendants have made this second showing, the Court weighs several private- and public-interest factors.  See id.; Ravulapalli v. Napolitano, 773 F. Supp. 2d 41, 55-56 (D.D.C. 2011); Center for Biological Diversity v. United States Forest Serv., 2024 WL 2299642, at *2-5.

## III. DISCUSSION

The core of the parties' dispute centers on a disagreement concerning the nature of the State's lawsuit. The State of Alaska argues that this suit is one that "seeks to enforce" Judge Friedrich's final judgment in Eklutna I, 2021 WL 4306110. See Opp. at 7. The Tribe, on the other hand, argues that the State's action is merely "a garden-variety Administrative Procedure Act ("APA") claim and a preclusion claim," which challenges new agency actions – that is, the Anderson Opinion and Interior's decision allowing the Tribe to conduct gaming on the Ondola Allotment. See Reply at 1. Determining the nature of the State's lawsuit is critical to deciding the instant motion for two reasons. First, if – as the State contends – its action is one that only seeks enforcement of a prior final judgment, then jurisdiction may be proper under the doctrine of "ancillary jurisdiction," which permits a court to enforce its judgments notwithstanding a lack of jurisdiction to hear a new case between the parties. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 378 (1994). Second, the primary thrust of the State's opposition to the Tribe's motion to transfer is its contention that the Tribe is seeking to "flout the Court's authority" by effectively seeking to "dissolves its final judgment" by transferring the case out of this District. See Opp. at 8.

The Court begins its analysis by considering the doctrine of ancillary jurisdiction and the issue of whether the State's action actually seeks to enforce a prior judgment, namely, the judgment entered by Judge Friedrich in Eklutna I. Because the Court concludes that this lawsuit does not seek to enforce that prior judgment, ancillary jurisdiction is not appropriate. The Court therefore considers whether transferring this case to the District of Alaska is proper.

## A. Enforcing a Prior Judgment and Ancillary Jurisdiction

The doctrine of ancillary jurisdiction "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. at 378; see Owens v. Thompson, Civil Action No. 23-0662 (TSC), 2024 WL 1328461, at *4 (D.D.C. Mar. 28, 2024). "Generally speaking," ancillary jurisdiction is asserted for two purposes:  "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent," and "(2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. at 379-80; see also Keepseagle v. Vilsack, 815 F.3d 28, 33 (D.C. Cir. 2016); Rochon v. Gonzales, 438 F.3d 1211, 1215 (D.C. Cir. 2006).  The Supreme Court has "cautioned against the exercise of jurisdiction over proceedings that are entirely new and original, or where the relief sought is of a different kind or on a different principle than that of the prior decree." Peacock v. Thomas, 516 U.S. 349, 358 (1996) (cleaned up).

In the instant case, the Court concludes that the State's action is not one that seeks to enforce a prior judgment, but one that is "entirely new."  First, the State's complaint as pled here does not by its terms seek to enforce a prior judgment.  It does not identify a particular portion of Judge Friedrich's judgment of dismissal that the State seeks to enforce.  And the State's two causes of action are more indicative of a challenge to new final agency actions – namely, the Anderson Opinion and Chairwoman Avery's approval of the Tribe's gaming ordinance – that were rendered years after Judge Friedrich's decision in Eklutna I, 2021 WL 4306110.  The State's first cause of action is a "garden-variety" APA claim alleging that new agency actions are "arbitrary, capricious, an abuse of discretion, in excess of statutory

11

authority, and/or otherwise contrary to the law." See Compl. ¶¶ 66, 69. The second cause of action – seemingly brought only against the Tribe – is that that the Tribe is collaterally estopped "from relitigating" the issue of whether the Sansonetti Opinion and Interior's earlier "Indian lands" determination were unlawful. See id. ¶ 71. Neither of these causes of action directly state that the State is seeking enforcement of a prior judgment. See Reply at 3 ("[N]owhere does the Complaint say that the State seeks to enforce Eklutna I or even use the terms 'enforce' or 'judgment' except in entirely unrelated contexts."). The claims reflect that the State is using Judge Friedrich's decision merely as support for its new challenge to new agency actions rather than seeking to enforce a specific mandate ordered by Judge Friedrich. Therefore, "the proper avenue for [the State's] arguments is a new lawsuit squarely challenging the validity of the [new agency decisions]." See Fund for Animals v. Norton, 390 F. Supp. 2d 12, 15 (D.D.C. 2005); see also Oceana, Inc. v. Coggins, Civil Action No. 19-3809 (LHK), 2021 WL 1788516, at *4 (N.D. Cal. May 5, 2021) (summarizing case law where "several courts have denied the motion to enforce" when "the agency makes a new rule and the plaintiffs, contending that the new rule violates the court's prior order, move to enforce the court's prior order").

        Second, even if the Court were to interpret the complaint in this case as one seeking to enforce a prior judgment, the judgment purportedly forming the basis of the State's action does not create any ongoing obligations that this Court can enforce. See Sierra Club v. McCarthy, 61 F. Supp. 3d 35, 39 (D.D.C. 2014) ("[I]f a plaintiff 'has received all relief required by that prior judgment, the motion to enforce [should be] denied.'") (quoting Heartland Hosp. v. Thompson, 328 F. Supp. 2d 8, 11 (D.D.C. 2004)). Judge Friedrich found – under the deferential APA standard – that Interior's use of the Sansonetti Opinion's framework in its previous "Indian lands" determination was not arbitrary and capricious or contrary to law. See Eklutna I, 2021

WL 4306110, at *4-8.  Judge Friedrich's judgment merely ordered that "the [Tribe] recover nothing, the action be dismissed on the merits, and the defendant U.S. Department of the Interior, et al recover costs from the plaintiff Native Village of Eklutna."  See Judgment in Eklutna I.  It did not contain any injunction mandate prohibiting Interior from changing course.  See Reply at 5.

The two cases on which the State primarily relies are distinguishable in two important respects.  See Opp. at 22.  First, in both cases, the courts determined that in order to protect an affirmative, ongoing judgment – i.e., an injunction or a declaratory judgment – ancillary jurisdiction was necessary to prevent a state court from "overturn[ing] federal judgments."  See Southwest Airlines Co. v. Texas Int'l Airlines, Inc., 546 F.2d 84, 90 (5th Cir. 1977) (concluding that the exercise of ancillary jurisdiction was appropriate to prevent a state court from "contraven[ing] [a party's] rights as defined by the district court . . . ."); Berman v. Denver Tramway Corp., 197 F.2d 946, 950 (10th Cir. 1952) (concluding that the exercise of ancillary jurisdiction was appropriate to protect a district court's permanent injunction from "relitigation in the state court").  As discussed above, there is no ongoing judgment that necessitates this Court's exercise of jurisdiction to "protect" the prior judgment.  Second, neither Southwest Airlines nor Berman involved a situation similar to the current case in which a party challenges a new set of agency actions that purportedly violate a prior court judgment.  See Fund for Animals v. Norton, 390 F. Supp. 2d at 15.

Ultimately, there is a difference between (1) seeking to enforce a specific mandate contained in a court's judgment, such that ancillary jurisdiction is proper, and (2) arguing that certain issues and claims have already been adjudicated such that re-litigation is precluded under doctrines such as collateral estoppel.  The State's action clearly falls in the second category.  See

13

Opp. at 23 (arguing that the instant action is to prevent the Tribe from being allowed "to relitigate the same issues, for the same parties, for the same Native Allotment"). In sum, the Court concludes that because the State's action does not seek to enforce a prior judgment, the exercise of ancillary jurisdiction is inappropriate. The current action is better understood as a "new lawsuit squarely challenging the validity" of the Anderson Opinion and Interior's decision to allow the Tribe to conduct gaming on the Ondola Allotment. See Fund for Animals v. Norton, 390 F. Supp. 2d at 15; see also Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. at 380 (holding that no ancillary jurisdiction existed where "the only order [ ] was that the suit be dismissed, a disposition that [was] in no way flouted or imperiled by" subsequent actions taken by the defendant).[4]

### B. Motion to Transfer

The Court concludes that transfer to the District of Alaska is warranted pursuant to 28 U.S.C. § 1404(a). At step one of the Section 1404(a) analysis, the Court finds that the Tribe has shown that the action could originally have been brought in the District of Alaska. See 28 U.S.C. § 1404(a). As to the Federal Defendants, venue is proper "in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1); see Patel v. Mayorkas, 2024 WL 5375472, at *2. Section 1391(e)(1) further states that "[a]dditional persons may be joined as parties to any such action in accordance with the

---

[4] To be clear, the Court does not take a position on whether a motion to enforce filed before Judge Friedrich in Eklutna I would be proper. See Opp. at 26 ("Nevertheless, should the Court conclude a different process must be followed – such as filing a motion to enforce in the prior litigation – the State will promptly comply.").

14

Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party." 28 U.S.C. § 1391(e)(1).

As to the Federal Defendants, venue is proper under either Section 1391(e)(1)(B) or 1391(e)(1)(C). If this action is viewed as one over real property – i.e., the Ondola Allotment – venue is proper under 28 U.S.C. § 1391(e)(1)(B) since the Ondola Allotment is located within the District of Alaska. On the other hand, if this action were characterized as one not involving real property, venue would be appropriate under 28 U.S.C. § 1391(e)(1)(C) because the State is a resident of Alaska. See Alaska Indus. Dev. & Exp. Auth. v. U.S. Dep't of Interior, 2024 WL 756602, at *3 (finding that venue was proper in the District of Alaska under Section 1391(e)(1) regardless of whether the "action were characterized" as involving real property). Turning to the Tribe, the Court must consider whether venue would be proper if the Federal Defendants "were not a party" to the action." See 28 U.S.C. § 1391(e)(1). In such a case, venue would be appropriate in the District of Alaska under Section 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" in Alaska. The Ondola Allotment, the Tribe's gaming operations, and the Bureau of Indian Affairs regional office to which the Tribe submitted its gaming lease for approval are all in Alaska. See Mem. at 14-15.

The State does not dispute that the venue statute allows for this action to have been brought in the District of Alaska. The State instead makes two arguments as to why it believes "[i]t is not clear whether the State's case could have been brought in the District of Alaska." See Opp. at 33. First, the State argues that the District of Alaska "likely does not have the same 'inherent authority' to enforce this Court's 2021 final judgment." Id. As just

discussed, however, the Court does not interpret the State's action as seeking to enforce a prior judgment. See supra Section III.A. Moreover, the sole case the State relies on in support, Winter v. Novartis Pharmaceuticals Corp., 39 F. Supp. 3d 348 (E.D.N.Y. 2014), merely stands for the proposition that if a party seeks to enforce a judgment in a district court that was obtained in a separate district court, the party must register that judgment pursuant to 28 U.S.C. § 1963 in the district where it seeks enforcement. See Winter v. Novartis Pharmaceuticals Corp., 39 F. Supp. 3d at 352. In other words, the State's concern about the District of Alaska's ability to enforce a judgment obtained in this District can be resolved by following the registration requirements in 28 U.S.C. § 1963.

Second, the State argues that it may not be able to bring its case in the District of Alaska because under Ninth Circuit case law, the Tribe may have sovereign immunity from suit. See Opp. at 33-34. Indeed, the State points out that in a case related to this case that was filed in the District of Alaska, Holl v. Avery, Civil Action No. 3:24-cv-0273 (JLR) (D. Alaska), the Tribe has moved to dismiss the action "due to the Tribe's sovereign immunity and for failure to join an indispensable party." See Opp. at 33; see also infra note 5. And relatedly, the federal defendants in Holl v. Avery "support that position, saying Ninth Circuit case law 'controls in this case and supports dismissal pursuant to Rule 19.'" Id. at 34. The State does not provide any support for its contention that a difference in circuit precedent is an appropriate consideration in determining whether a case could have been brought in a particular district. The Court is also highly skeptical of the State's argument. Allowing a party to avoid unfavorable circuit precedent by filing suit in a district outside of the circuit and then arguing that the case could not have been brought in a district within the circuit because of unfavorable precedent would likely promote forum shopping.

16

The Court therefore concludes that this action could have been brought in the District of Alaska. The Court now must analyze the public- and private-interest factors.

1. Public-Interest Factors

Turning first to the public-interest factors, the Court must balance "(1) the transferee's familiarity with the governing law; (2) the relative congestion of the courts of the transferor and potential transferee; and (3) the local interest in deciding local controversies at home." Blackhawk Consulting, LLC v. Fed. Nat'l Mortg. Ass'n, 975 F. Supp. 2d at 60 (citation and quotation marks omitted). As to the first factor, "[b]ecause Plaintiff pursues federal claims requiring interpretation of federal law, '[t]he transferee district is presumed to be equally familiar with the federal laws governing [the plaintiff's] claims.'" Wolfram Alpha LLC v. Cuccinelli, 490 F. Supp. 3d at 335 (quoting Aftab v. Gonzalez, 597 F. Supp. 2d 76, 83 (D.D.C. 2009)). The Tribe argues that because this case likely will involve the interpretation of statutes and case law specific to Alaska – such as the Alaska Native Claims Settlement Act and the ANAA – this factor favors transferring the case. See Mem. at 20. While the Tribe's argument has some appeal, the Court is confident that judges in both the District of Alaska and the District of Columbia can more than adequately adjudicate the claims in this case. The Court therefore concludes that this factor is neutral. See Wolfram Alpha LLC v. Cuccinelli, 490 F. Supp. 3d at 335 ("When neither party contests that federal claims 'could be handled competently by a court in either district,' then this factor is neutral.") (quoting Aishat v. U.S. Dep't of Homeland Sec., 288 F. Supp. 3d 261, 271 (D.D.C. 2018)).

As to the second factor – the relative congestion of the courts of the transferor and potential transferee – neither party provides much analysis regarding the relative congestion of the dockets in the District of Columbia and the District of Alaska. The Tribe points out that there

17

are nearly 200 more cases per judgeship in this District than in the District of Alaska.  See Mem. at 19.  While this difference in cases per judgeship "slightly favors transfer," "this factor plays a minor role in the Court's analysis."  Alaska Indus. Dev. & Exp. Auth. v. U.S. Dep't of Interior, 2024 WL 756602, at *5; see Gulf Restoration Network v. Jewell, 87 F. Supp. 3d 303, 316-17 (D.D.C. 2015) ("Absent a showing that the docket of either court is 'substantially more congested' than the other, this factor is neutral.") (quoting Nat'l Ass'n of Home Builders v. U.S. E.P.A., 675 F. Supp. 2d 173, 178 (D.D.C. 2009)).

The final factor – the local interest in deciding local controversies at home – is "'[p]erhaps the most important factor' in the motion-to-transfer balancing test."  Alaska Wilderness League v. Jewell, 99 F. Supp. 3d 112, 116 (D.D.C. 2015) (quoting Pres. Soc. of Charleston v. U.S. Army Corps of Eng'rs, 893 F. Supp. 2d 49, 54 (D.D.C. 2012)); see Seafreeze Shoreside Inc. v. United States Dep't of the Interior, Civil Action No. 21-3276 (CRC), 2022 WL 3906934, at *4 (D.D.C. June 27, 2022).  There can be little doubt that the impact of this case will be felt primarily – and more likely exclusively – in Alaska.  See Ysleta del Sur Pueblo v. Nat'l Indian Gaming Comm'n, 731 F. Supp. 2d 36, 41 (D.D.C. 2010) ("The inquiry is whether the impact of the litigation is local to one region.") (citation omitted).  The NIGC and Interior decisions that the State seeks to enjoin relate exclusively to gaming operations on the Ondola Allotment located within the District of Alaska.  Furthermore, the framework for addressing issues of tribal jurisdiction over allotments outlined in the Anderson Opinion – which the State seeks to set aside and enjoin further use of, see Compl. at 24-25 – deals exclusively with "government jurisdiction of Alaska Native Villages over land and nonmembers."  See Anderson Opinion at 1 (capitalization omitted).  In other words, the State's action challenges agency decisions and legal interpretations that relate exclusively to Alaska.  See Mem. at 18 ("[T]here is

a significant local interest in the issues raised in the case, which involve the Tribe's gaming rights and the rules governing tribal territorial jurisdiction over tribal-member-owned allotments in Alaska <u>only</u>.") (emphasis in original).  Indeed, the State does not contest – nor could it – that "there is a local interest in this litigation."  <u>See</u> Opp. at 35.

The State's primary argument in opposition is that because the issues in this case "have already been litigated," "this district 'has a meaningful connection to the controversy.'"  Opp. at 35 (quoting <u>Wilderness Workshop v. Harrell</u>, 676 F. Supp. 3d 1, 8 (D.D.C. 2023)).  But the State is free to argue that the Tribe is precluded from relitigating the issues in this case under the doctrine of issue preclusion either in this Court or in the District of Alaska.  <u>See</u> Opp. at 30 (acknowledging that "the District of Alaska is just as capable as this Court at applying judicial and collateral estoppel").  The Court therefore is not persuaded that the State's argument is relevant to deciding the Tribe's motion to transfer.  Moreover, the primary case relied on by the State for this argument, <u>Wilderness Workshop v. Harrell</u>, is unavailing.  In <u>Harrell</u>, Judge Cobb relied heavily on the fact that the case had "national policy implications."  <u>See</u> <u>Wilderness Workshop v. Harrell</u>, 676 F. Supp. 3d at 8.  The State does not meaningfully contend that this case has any national significance.  <u>See</u> Reply at 17.  Nor could it.  As explained above, this case involves gaming on an allotment located in Alaska, which was approved based on Interior's interpretation of a statute that deals exclusively with Alaska Native Villages.  This case therefore is distinguishable from the line of cases concluding that transfer is inappropriate when the national significance of the case outweighs the local interest.  <u>See</u>, <u>e.g.</u>, <u>Wilderness Workshop v. Harrell</u>, 676 F. Supp. 3d at 6 ("Most importantly, the threshold issue in this case is the interpretation of a federal statute – a legal question with the potential to affect the administration of national forests throughout the country."); <u>Greater Yellowstone Coal. v. Bosworth</u>, 180 F.

Supp. 2d 124, 128-29 (D.D.C. 2001) ("[B]ecause both of the plaintiffs' counts focus on interpretation of federal statutes, and because federal government officials in the District of Columbia were involved in the decision [at issue] . . ., this case has some national significance and has a nexus to the District of Columbia."); see also Alaska Indus. Dev. & Exp. Auth. v. U.S. Dep't of Interior, 2024 WL 756602, at *3 ("[T]here is no blanket rule that 'national policy' cases should be brought in the District of Columbia . . . .") (citation and quotation marks omitted).

In sum, the Court concludes that the public-interest factors favor granting the motion to transfer in light of the strong local interests implicated in this case. See Ysleta del Sur Pueblo v. Nat'l Indian Gaming Comm'n, 731 F. Supp. 2d at 41 (granting motion to transfer given the "strong local implications" in a case involving tribal gaming operations); see also Western Watersheds Project v. Tidwell, 306 F. Supp. 3d 350, 361 (D.D.C. 2017) ("Disputes regarding permits and land-use issues are generally recognized to be a 'localized interest.'").[5]

### 2. Private-Interest Factors

The relevant factors to consider in addressing whether the private-interest factors favor transfer are: "(1) the plaintiff's choice of forum; (2) the defendant's preferred forum;

---

[5] The parties discuss at length a related case filed in the District of Alaska, Holl v. Avery, Civil Action No. 3:24-cv-0273 (JLR) (D. Alaska). In that case, a group of Alaskan residents sued Chairwoman Avery and the Tribe seeking a declaratory judgment that Chairwoman Avery's approval of the Tribe's gaming operations was unlawful. See Holl v. Avery, Civil Action No. 3:24-cv-0273 (JLR), First Amended Complaint (D. Alaska Dec. 30, 2024) [Dkt. No. 7]. In the context of its discussion of the public interest factors, the State argues that the Tribe's heavy reliance on the Holl v. Avery litigation does not support its request to transfer the case. See Opp. at 35. The Tribe responds that Holl v. Avery is "irrelevant to the public interest factors" analysis. See Reply at 18. At most, the risk of inconsistent results caused by having related litigations decided in two different districts weighs in favor of transfer. See Ysleta del Sur Pueblo v. Nat'l Indian Gaming Comm'n, 731 F. Supp. 2d at 41-42 (considering the possibility of "inconsistent results" in the context of the public interest factors). But because transfer is warranted even without considering the risk of inconsistent results, the Court does not find it necessary to delve into the parties' many disputes regarding this related litigation.

(3) the location where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) ease of access to sources of proof." Blackhawk Consulting, LLC v. Fed. Nat'l Mortg. Ass'n, 975 F. Supp. 2d at 60. The State argues that the first and third factors favor denying the Tribe's motion to transfer. See Opp. at 34. As to the plaintiff's choice of forum, "the significance of this factor is diminished by the fact that this District is not [its] home forum." Patel v. Mayorkas, 2024 WL 5375472, at *2; see Bourdon v. U.S. Dep't of Homeland Security, 235 F. Supp. 3d 298, 305 (D.D.C. 2017) ("Although the 'plaintiff's choice of forum is ordinarily entitled to deference,' that choice is conferred considerably less deference when it is not the plaintiff's home forum, has few factual ties to the case at hand, and defendants seek to transfer to plaintiff's home forum.") (citation omitted). Accordingly, the Court assigns little weight to this factor.

The third factor – the location where the claim arose – presents a complicated issue in this case. "In considering where a claim arose, both the location of the decisionmaking process and the location of the impacts of the [decision] are considered." Wilderness Workshop v. Harrell, 676 F. Supp. 3d at 7. The State argues that this factor weighs against transferring the case because "the decisions in question . . . were made by Interior's Solicitor, the Acting Chair of the NIGC, and Interior's Assistant-Secretary, all officials based in the District of Columbia." Opp. at 34; see also id. at 31 (listing the connection to the District of Columbia of each of the challenged decisions). While the location where the challenged decisions were made certainly weighs in the State's favor, the actions taken by these officials "are not magic acts that somehow transform a transferable case into an un-transferable one." Alaska Indus. Dev. & Exp. Auth. v. U.S. Dep't of Interior, 2024 WL 756602, at *5 (quoting Alaska Wilderness League v. Jewell, 99 F. Supp. 3d at 121). This is especially true where – outside of pointing to the fact that the

21

Solicitor of the Interior, the NIGC, and Acting Chairwoman Avery are based in this District, see Opp. at 31 – the State provides little argument or evidence supporting the contention that the "alleged degree of involvement is substantial enough . . . to tip the scales against transfer." Alaska Indus. Dev. & Exp. Auth. v. U.S. Dep't of Interior, 2024 WL 756602, at *5; see Alaska Wilderness League v. Jewell, 99 F. Supp. 3d at 121 ("[A]n official's signature and promulgation of a rule might serve as data points militating against transfer, if the facts and circumstances surrounding these activities otherwise suggest that officials in Washington were significantly involved in the development of the rule.").

The Court finds the localized nature and impacts of this action are more significant to the analysis of this factor. See Wilderness Workshop v. Harrell, 676 F. Supp. 3d at 7. As explained above, the impacts of this case will be felt exclusively in Alaska. See supra Section III.B.1. And the issues of law relate solely to tribal law in Alaska. See id. Accordingly, the Court concludes that this factor weighs moderately in favor of transfer. See Ysleta del Sur Pueblo v. Nat'l Indian Gaming Comm'n, 731 F. Supp. 2d at 42 ("[J]ust because the NIGC's decision was issued in the District of Columbia, does not mean that this is where plaintiff's claim 'arose.' Plaintiff's claim grows out of gaming activity taking place in Texas; therefore, the claim arises out of that state.") (internal citations and quotation marks omitted); Alaska Indus. Dev. & Exp. Auth. v. U.S. Dep't of Interior, 2024 WL 756602, at *6 (granting motion to transfer notwithstanding "allegations that high-ranking DOI officials in Washington, D.C. were involved in the challenged action"); see also Kinsella v. Bureau of Ocean Energy Mgmt., Civil Action No. 22-2147 (JMC), 2022 WL 16852674, at *3 (D.D.C. Nov. 10, 2022) (concluding that this factor was neutral where the decision was made in the District of Columbia but the effects of the agency action would "have [no] impact whatsoever in the District of Columbia").

The remaining factors all favor granting the Tribe's motion. In the context of the second factor – the defendants' preferred forum – "[t]ransfer is favored when defendants' preferred forum is also the plaintiff's home forum." Wolfram Alpha LLC v. Cuccinelli, 490 F. Supp. 3d at 332. The fourth, fifth, and sixth factors – the convenience of the parties and witnesses and the ease of access to sources of proof – favor transfer given that the District of Alaska is the home forum of both the Tribe and the State and is the location of the Ondola Allotment. See Wyandotte Nation v. Salazar, 825 F. Supp. 2d 261, 270 (D.D.C. 2011) ("The Court concludes that transfer to the District of Kansas would increase the convenience of the parties because it is the jurisdiction in which the Park City Land is located."); see also Liu v. Mayorkas, 737 F. Supp. 3d 1, 4 (D.D.C. 2024). With that said, "[i]n cases where, as here, 'the action involves administrative review that the court is likely to determine on the papers' the convenience factors carry little weight in the transfer analysis." M & N Plastics, Inc. v. Sebelius, 997 F. Supp. 2d 19, 25 (D.D.C. 2013).

In sum, the Court concludes that the balance of the private-interest factors weighs at least slightly in favor of transferring the case. The Court's decision to transfer this case, however, is more significantly guided by "the public-interest factors, which weigh heavily in favor of transfer." Kinsella v. Bureau of Ocean Energy Mgmt., 2022 WL 16852674, at *4. In light of the foregoing, it is hereby

ORDERED that the Tribe's Motion to Transfer [Dkt. No. 16] is GRANTED; and it is

FURTHER ORDERED that this case shall be transferred forthwith to the United States District Court for the District of Alaska.

SO ORDERED.

PAUL L. FRIEDMAN
United States District Judge

DATE: 6|23|25